UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| THE LAMAR COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-043-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON-FAYETTE URBAN | ) | **MEMORANDUM OPINION** |
| COUNTY GOVERNMENT, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff The Lamar Company, LLC, ("Lamar") sought to digitize several of the signs it owns in the Lexington area. But under the sign regulations in force in 2020, Defendant Lexington-Fayette Urban County Government ("Lexington") denied Lamar's permit applications because they requested non-permitted sign types. [Record No. 1-1 (hereafter, "Old Sign Regulations").] Lamar then brought these claims, alleging that Lexington's sign regulations violated the First and Fourteenth Amendments to the U.S. Constitution and Sections 1, 2, and 8 of the Kentucky Constitution. [Record No. 1] It seeks damages, a declaratory judgment, and injunctive relief.

Circumstances changed on March 18, 2021, when Lexington adopted a new set of sign regulations. *See Lexington-Fayette Cty., Ky. Zoning Ordinance*, art. 17 (2021) (hereafter, "New Sign Regulations"). The New Sign Regulations replaced several of the provisions of the Old Sign Regulations challenged by Lamar. As a result, Lexington moved to dismiss the Complaint as moot. [Record No. 16] It also argued that Lamar's claims are unripe and that

further proceedings should be stayed pending resolution of *City of Austin v. Reagan National Advertising of Texas, Inc.*, which is currently before the Supreme Court of the United States. [*Id.*]

Lamar's claims for injunctive and declaratory relief are now moot because the challenged sign regulations have been repealed and replaced. However, its damages claims are not moot and are ripe for review. As a result, Lexington's motion will only be granted in part. However, before proceedings related to Lamar's remaining claims go forward, this action will be stayed pending the resolution of the *City of Austin* case, which may answer several legal questions central to this matter.

I.

Lamar is a Louisiana LLC that displays signs "present[ing] its own and the public's non-commercial and commercial speech and messages." [Record No. 1, ¶¶ 14–15] Kentucky is one place it provides this service. [*Id.*] In Lexington, it sought to display speech and messages *via* digital, rather than static, signs. [*Id.* at ¶ 28] It applied for "twenty permits to change the existing static sign faces to digital sign faces" through the process mandated by Lexington's Old Sign Regulations. [*Id.* at ¶¶ 38–42] But Lexington denied all twenty applications because they sought permits for non-permitted sign types under the Old Sign Regulations. [*Id.* at ¶ 43]

Those regulations distinguish business signs—on-premise signs, which direct attention to something on the premises where the sign is located—and advertising signs—off-premise signs, which direct the viewers' attention to another premises. [Record No. 1-1, p. 3 (Sections 17-3(b)(1), (b)(4)).] Additionally, the regulations permit the use of digital sign faces (called

electronic message display systems) only in specific locations, and they only allow specific information to be displayed by them. [*Id.* at 18, 20, 21 (Sections 17-7(g)–(i)).] Lamar alleges that these and several other provisions and definitions contained in the Old Sign Regulations are unconstitutional, and it brought this action in response to the permit denials.

The Complaint contains five causes of action: (1) prohibiting off-premises digital signs while allowing on-premise digital signs is an unconstitutional content-based restrictions on free speech; (2) the entire Old Sign Regulation is unconstitutional due to content-based restrictions on free speech; (3) alternatively, the off-premise/on-premise distinction for digital signs is an unconstitutional content-neutral restriction of free speech; (4) the permitting scheme is an unconstitutional prior restraint and content-based restriction of free speech; and (5) declaratory judgment is appropriate for all alleged constitutional violations. [Record No. 1, ¶¶ 72–176] In addition to declaratory relief, Lamar seeks injunctive relief, compensatory damages, and nominal damages. [*Id.*]

Lexington's sign regulations changed after Lamar's Complaint was filed. The process of replacing the Old Sign Ordinance began in 2017, after the Supreme Court's ruling in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). [*See* Record No. 16, p. 4 (citing 2019 "Public Hearing Minutes" and 2021 "Sign Ordinance Presentation").] Lexington sought to "align [the] sign regulations with the spirit of *Reed*" and conducted a "line-by-line review" of the Old Sign Regulations. [*Id.*] Ultimately, the Lexington-Fayette County Urban County Council approved the changes on March 18, 2021. *See* New Sign Regulations.

The changes to the sign regulations were significant. Several allegedly unconstitutional terms were either redefined or omitted. *See* New Sign Regulations, § 17-18. Limits on the

permitted content for digital signs were removed. *See id.*, §§ 17-7; 17-11. And challenged enforcement mechanisms and exemption provisions were removed. *See id.* at §§ 17-4; 17-15. In Lexington's view, the New Sign Regulations are "truly a rewrite" of the ordinance. [Record No. 16, p. 15 (citing 2019 "Public Hearing Minutes").] Accordingly, it contends that Lamar's claims are moot because the Court cannot enjoin or declare invalid an ordinance no longer in force. [Record No. 16] It also argues that Lamar's failure to propose a text amendment renders its claims unripe and that a stay is appropriate. [*Id.*]

## II.

A party may assert that the Court lacks subject-matter jurisdiction in a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1). Such motions may "challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). Lexington does not identify which challenge its motion makes, and Lamar argues that it presents only a facial challenge. [Record No. 17, pp. 6–7]

After reviewing Lexington's motion, the Court determines that it is best considered a factual attack to jurisdiction. It raises several matters—namely, the legislative history and content of the New Sign Regulations—which may require the Court to "weigh the evidence to confirm its jurisdiction." 2 James Wm. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed. 2000); *see also, e.g.*, *Thomas v. City of Memphis*, 996 F.3d 318, 323 (6th Cir. 2021) (finding a factual challenge where "the district court analyzed the Complaint in light of the City's new

media relations policy, which the City contends deprives the Court of a factual predicate for jurisdiction").

"With a factual attack, the Court must 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Ky. Mist Moonshine, Inc. v. Univ. of Ky.*, 192 F. Supp. 3d 772, 779 (E.D. Ky. 2016) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 492 F.3d 320, 330 (6th Cir. 2007)). Confronted with this type of challenge, Lamar's "allegations are not presumed to be true" and it "bears the burden of establishing" subject-matter jurisdiction. *Id.* (quotations omitted).

### III.

Article III of the United States Constitution extends the "judicial Power" only to "Cases" and "Controversies." U.S. Const. art. III, § 2. "A claim is not 'amenable to . . . the judicial process,' *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998), when it is filed too early (making it unripe) [or] when it is filed too late (making it moot)." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). Lexington has raised both justiciability issues here. It argues that: (1) the amendment of the sign ordinance moots Lamar's requests for injunctive and declaratory relief; and (2) any of Lamar's remaining live claims are nevertheless unripe for review.

**A. Mootness**

Federal courts "may only adjudicate 'actual, ongoing controversies.'" *Mwasaru v. Napolitano*, 619 F.3d 545, 549 (6th Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). Accordingly, a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Wedgewood Ltd. P'ship I v. Twp.*

*of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010) (quotations omitted). Lexington argues that the replacement of the Old Sign Regulations with the New Sign Regulations renders Lamar's requests for declaratory and injunctive relief moot. [Record No. 16, pp. 5–7] But Lamar rejoins that the new regulations retain several harms present in the old ones. [Record No. 17, pp. 9–14]

"Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case . . . ." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019); *see also Libertarian Party of Ohio v. Hulsted*, 497 F. App'x 581, 583 (6th Cir. 2012) ("Absent special circumstances . . . the legislative repeal of a statute renders a case challenging that statute moot." (citation omitted)); *Tini Bikinis-Saginaw, LLC v. Saginaw Charter Twp.*, 836 F. Supp. 2d 504, 519 (E.D. Mich. 2011) (quoting *Coal. For the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000)) ("Generally, when an ordinance is repealed any challenges to the constitutionality of that ordinance become moot.").

The exception to this rule—"clear contraindications that the change [in legislation] is not genuine," *Speech First, Inc.*, 939 F.3d at 768—exists to prevent defendants from "repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). It "properly applies only when a recalcitrant legislature clearly intends to reenact the challenged regulation." *Ky. Right to Life v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997). In other words, "before voluntary cessation of a practice could ever moot a claim, the challenged

practice must have *actually ceased*." *Sullivan v. Benningfield*, 920 F.3d 401, 411 (6th Cir. 2019) (citation omitted).

Therefore, the issue is "whether the new statute 'is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues.'" *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016) (quoting *City of Jacksonville*, 508 U.S. at 662 n.3). At this stage, "the question is whether the new statute 'operates in the same fundamental way' as the old statute." *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 823 (6th Cir. 2012) (quoting *Cam I, Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006)).

Following a side-by-side review of the Old and New Sign Regulations, the Court concludes that the ordinance has been sufficiently altered. Lamar correctly notes that not every challenged provision was repealed. [Record No. 17, pp. 11–13] But Lexington's description of the amendment process as a "complete overhaul" accurately reflects the significant changes made to Lexington's sign regulations. [Record No. 16, p. 7] And like the challenged ordinance in *Bench Billboard Co. v. City of Cincinnati*, the New Sign Regulations were "years in the making." 675 F.3d 974, 982 (6th Cir. 2012). [*Id.* at 4] Nothing in the record indicates that the changes were made in response to this litigation or that Lexington intends to reenact the old ordinance. Instead, Lexington made a genuine choice to change its sign regulations.[1]

---

[1] As stated by the Second Circuit in a case cited by Lexington, "arguments as to the unlawfulness of the ordinance as amended should have been raised by Lamar in an amended complaint." *Lamar Advert. Of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004).

Without evidence that Lexington's amendment of its sign regulations was insincere, the Court is left with a request to declare unconstitutional and enjoin enforcement of an ordinance that is no longer on the books. However, it is well-settled that a federal court "can neither declare unconstitutional nor enjoin enforcement of a provision that is no longer in effect." *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004). Accordingly, Lamar's requests for declaratory and injunctive relief are indeed moot.

But "[c]laims for damages are largely able to avoid mootness challenges." *Ernold v. Davis*, 855 F.3d 715, 719 (6th Cir. 2017) (citing 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3553.3 (3d ed. 2017)). Even where "the repeal or amendment of a law moots challenges to the original law," the "existence of [a] damages claim preserves the plaintiff's backward-looking right to challenge the original law and to preserve a live case or controversy over that dispute." *Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 460–61 (6th Cir. 2007) (citing *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387 (6th Cir. 2005)); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (Kavanaugh, J., concurring) ("[A] plaintiff's request for nominal damages . . . can keep an otherwise moot case alive.").

Lexington acknowledges that "mootness does not bar Lamar's claims for monetary and nominal damages." [Record No. 18, p. 2 n.1] It challenges those claims on ripeness grounds alone. [*Id.*] Accordingly, given the well-settled authority described above and Lexington's concession, the Court will dismiss Lamar's claims for injunctive and declaratory relief as moot, but its damages claims remain.

### B. Ripeness

Lexington acknowledges that Lamar's damages claims remain viable, but it argues that they are not ripe. The ripeness doctrine ensures "that the federal courts resolve existing, substantial controversies, not disputes anchored in future events that may not occur as anticipated or may not occur at all." *Carey v. Wolnitzek*, 614 F.3d 189, 196 (6th Cir. 2010) (cleaned up) (quoting *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 282, 284 (6th Cir. 1997)). Two questions must be answered in determining whether Lamar's claim is ripe.

> One: Does the claim arise in a concrete factual context and concern a dispute that is likely to come to pass?
> Two: What is the hardship to the parties of withholding court consideration?

*Overdrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 957–58 (6th Cir. 2021) (cleaned up). "[E]ven one negative answer" to these questions "creates a ripeness problem." *Id.* at 958.

Lexington offers a single argument in support of its position: because Lamar did not utilize the text amendment process outlined in Lexington's zoning ordinance, it failed to meet the finality requirement applied in some land use cases. [Record No. 16, pp. 7–10] The text amendment process allows "any person or governmental body" to propose an "amendment to the text of th[e] Zoning Ordinance." *Lexington-Fayette Cty., Ky. Zoning Ordinance*, § 6-2 (2021). Lexington's Planning Commission must then review the application and "report its findings at a public hearing." *Id.* at § 6-4. At that public hearing, the Planning Commission must vote to recommend the grant or denial of the text amendment and forward that recommendation to the Lexington-Fayette Urban County Council. *Id.* The amendment can only be adopted by "an affirmative vote of a majority" of the council. *Id.* at § 6-8.

In Lexington's view, Lamar cannot challenge the constitutionality of the Old Sign Regulations without engaging in this process. It argues that where further administrative actions would not be futile, Lamar has not met the finality requirement in *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). That rule—as recently clarified—requires plaintiffs to show "that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question'" before raising a Fifth Amendment regulatory takings claim. *Pakdel v. City and Cty. of S.F.*, 2021 U.S. LEXIS 3557, No. 20-1212, slip op. at 4 (June 28, 2021) (quoting *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 739 (1997)). The Sixth Circuit has extended this requirement "beyond claims of regulatory takings to various other constitutional claims arising out of land use disputes." *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 613 (6th Cir. 2008) (collecting cases).

But Lexington's briefing leaves a key question unanswered: whether Lamar's Complaint presents "constitutional claims arising out of land use disputes." *Id.* Certainly, the injury Lamar allegedly suffered was the denial of permits to convert its signs to digital faces. But at its core, this lawsuit is not a regulatory takings challenge involving other, incidental constitutional claims—it is a direct challenge of the constitutionality of the ordinance under the First and Fourteenth Amendments. In contrast to Lamar's challenge, the plaintiffs in the cases Lexington relies upon challenged the procedure or application of a law, not the law's substance. *See, e.g.*, *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154 (6th Cir. 1992) (alleging that reduction of a fishing license quota to zero violated the Fourteenth Amendment); *Bannum, Inc. v. Louisville*, 958 F.2d 1354, 1357 (6th Cir. 1991) (alleging that application of zoning procedures violated the Equal Protection clause); *Insomnia*, 278 F. App'x at 611

(alleging denial of planned subdivision "out of aversion to the adult entertainment business" in violation of First and Fourteenth Amendments).

Lamar has not brought these types of "constitutional claims arising out of land use disputes," so the finality requirement is inapplicable here. *Insomnia*, 278 F. App'x at 613. It need only demonstrate a concrete factual context, that a dispute is likely to occur, and that the Court should not withhold consideration. *Overdrive, Inc.*, 986 F.3d 957–58. Lexington has offered no argument regarding the application of these factors. But this First Amendment challenge "presents an issue that is 'purely legal, and will not be clarified by further factual development.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 581 (1985)). Additionally, this analysis is generally "relaxed for First Amendment cases involving a facial challenge to a regulation because courts see a need to prevent the chilling of expressive activity." *Currence v. City of Cincinnati*, 28 F. App'x 438, 441 (6th Cir. 2002). Given these considerations, Lamar's claims are ripe for review by the Court.

## IV.

Lexington has made an alternative motion to stay the case pending a decision of the Unites States Supreme Court in *City of Austin v. Reagan National Advertising of Texas, Inc*. [Record No. 16, pp. 10–12] One key fact has since changed since briefing in this matter completed: the Supreme Court of the United States granted the petition for certiorari in the case. *See City of Austin*, 2021 U.S. LEXIS 3524, No. 20-1029 (June 28, 2021). That case presents a single question: is the city code's distinction between on-premise signs, which may

be digitized, and off-premise signs, which may not, is a facially unconstitutional content-based regulation under *Reed v. Town of Gilbert*, 576 U.S. 155 (2015)?

The Court retains broad discretion to stay these proceedings pending the resolution of other, independent proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Beydoun v. Holder* 2015 U.S. Dist. LXIS 17795, at *6 (E.D. Mich. Feb. 13, 2015) ("A district court may stay a case in order to allow a higher court in a separate case to settle issue of law that have bearing on the matter to be stayed." (citations omitted)). "[T]here is no precise test for determining whether to issue a stay" in this circumstance. *Caudill v. Wells Fargo Home Mortg., Inc.*, 2016 U.S. Dist. LEXIS 89136, at *7–8 (E.D. Ky. July 11, 2016). The Court considers several factors, including: (1) the potential dispositive effect of the other proceeding; (2) judicial economy; (3) the public welfare; and (4) the balance of hardships or prejudice. *See Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004); *Caudill*, 2016 U.S. Dist. LEXIS 89136, at *7.

The Court must first consider the potential dispositive effect of any ruling in *City of Austin*. Lamar argues that it relates to only one of its five causes of action. [Record No. 17, pp. 21–22] But the question presented asks whether an on-premise/off-premise distinction is a facially unconstitutional content-based regulation. Should the Supreme Court resolve *City of Austin* with a substantive ruling, its result will undoubtedly control the answers to the key legal questions presented by Lamar's Complaint. Even if it "fails to be dispositive of all issues in this case, its ruling is still likely to significantly simplify this case." *Beydoun*, 2015 U.S. Dist. LEXIS 17795, at *8. At least, it would "narrow the issues" here and "assist in the

determination of the questions of law involved." *Landis*, 299 U.S. at 253. The first factor weighs strongly in favor of a stay.

Additionally, whether a stay would harm the public welfare carries limited weight here. The public has an interest in the enforcement of constitutional rights. But it also has an interest in receiving clarification on the limits of those rights, and the grant of certiorari in *City of Austin* indicates that this legal question has not yet been fully answered. This factor "does not tilt the balance heavily either way," *Michael*, 325 F. Supp. 2d at 833, but weighs slightly in favor of a stay.

The final factors—the interests of judicial economy and the balance of hardships— weigh in favor of granting a stay for the same core reason. Because the Supreme Court has indicated it will rule on an issue central this matter, even if Lamar's case is resolved prior to *City of Austin*, questions will linger until the Supreme Court has issued its opinion. In other words, it is inevitable that final resolution of the merits of this matter will be delayed until *City of Austin* is resolved. Other considerations under these two factors stem from that basic conclusion.

First, while there is limited support for Lexington's argument that discovery will be extensive or complex in this matter, the parties do not dispute that conducting discovery and resolving any other issues will require both the Court and the parties to expend significant time and other resources. "That effort" could "be wasted and unnecessary" depending on the outcome in *City of Austin*. *Michael*, 325 F. Supp. 2d at 833. Additionally, the recent grant of certiorari for the Supreme Court's October 2021 term means the delay here "will be, in all likelihood, less than a year." *Id.* The hardship imposed by this delay is reduced because, as

explained above, only Lamar's damages claims remain, and the challenged ordinance is no longer in force. The alleged harm will not persist during this period of delay. Instead, the parties will benefit from a final ruling consistent with Supreme Court authority. On balance, the benefits of granting a stay outweigh the limited hardships it entails.

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Defendant Lexington's motion to dismiss [Record No. 16] is **GRANTED**, in part, and **DENIED**, in part. Plaintiff Lamar's claims for declaratory and injunctive relief are **DISMISSED**, as moot. Its claims for damages remain pending.

2. Defendant Lexington's motion to stay the proceedings [Record No. 16] is **GRANTED**. Subject to intervening orders, this action is **STAYED** pending final resolution of Supreme Court Case No. 20-1029, described above. Lexington shall answer or otherwise respond to Lamar's Complaint within **twenty (20) days** of the final resolution of that case.

Dated: June 30, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky